IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STATE OF MARYLAND, | * | |
| COMPTROLLER OF MARYLAND | * | |
| | * | |
| v. | * | Civil No. JFM-09-2702 |
| | * | |
| DENISE A. CIOTTI | * | |
| | ****** | |

OPINION

This is an appeal from an order entered by the Bankruptcy Court to start discharging tax debts owed by Denise Ciotti to the State of Maryland for the years 1992 through 1996. The order of the Bankruptcy Court will be reversed.[1]

The material facts are not in dispute. In 1996 Ciotti filed Maryland income tax returns for the years 1992, 1993, 1994, 1995, and 1996. In 1998 the Internal Revenue Service issued a Letter of Determination making adjustments to Ciotti's income tax returns that substantially increased her federal adjusted income for each of those tax years. Maryland taxable income is based upon a taxpayer's federal adjusted income and, in accordance with Maryland law, Ciotti was required to report the changes to her federal adjusted income to Maryland tax authorities. She did not do so. However, the Internal Revenue Service itself reported the adjustments to the Maryland tax authorities and based on the information provided by the Internal Revenue Service, the Comptroller of Maryland made adjustments to Ciotti's tax income tax returns that resulted in an

---

1 Ciotti asserts that the Bankruptcy Court's discharge order is not a "final order" over which this court may exercise its appellate jurisdiction under 28 U.S.C. §158(a)(1). Because the order "finally dispose[s] of [a] discrete dispute[]," *see In Re Computer Learning Centers, Inc.* 407 F.3d 656, 660 (4th Cir. 2005), I disagree. *See also In Re Lucas*, 300 B.R. 526, 530 (10th Cir. BAP 2003) ("An order finding a debt dischargeable is a final order.") In any event, the issue is academic because in her opposition memorandum, Ciotti also states that she would consent to a motion for interlocutory appeal if one were filed. I certainly would grant that motion.

assessment of over $500,000 in taxes, penalties, and interest.

On April 9, 2007, Ciotti filed for bankruptcy under Chapter 7 of the Bankruptcy Code. She received her discharge under Chapter 7 on August 22, 2007, and the case was closed on August 31, 2007.  On February 24, 2009, Ciotti filed an action in the Bankruptcy Court seeking a declaration of her Maryland income tax liabilities for the years 1992 through 1996 had been discharged.  On September 11, 2009, the Bankruptcy Court issued a decision declaring that Ciotti's tax liabilities had been discharged.

Resolution of the question presented in this case turns on the meaning of the words "or equivalent report or notice" added to 11 U.S.C. §523(a)(1)(b) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  ("BAPCPA").  As amended, §523(a)(1) provides:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—(1) for a tax or a customs duty—(A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed; (B) with respect to which a return, *or equivalent report or notice*, if required—(i) was not filed *or given*; or (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax…

(Language added by BAPCPA italicized).

Maryland law requires that a taxpayer report to Maryland tax authorities any determination made by the Internal Revenue Service increasing the taxpayer's federal taxable income.  *See* Md. Code Ann., Tax-In General Section 13-409(b)(1).  The Bankruptcy Court ruled, however, that the report required by section 13-409(b)(1) is not "equivalent" to a tax return and thus does not fall within the purview of Section

2

523(a)(1) so as to prevent Ciotti's Maryland state income taxes from being dischargeable.

The basis for this ruling was that the Section 13-409(b)(1) report does not constitute a "return" – and thus cannot be deemed to be the "equivalent of a return."[2] The initial premise of the Bankruptcy Court's reasoning is incontrovertible.

. . .[I]n order for a document to be considered a 'return,' under either the bankruptcy or the tax laws, it must: (1) purport to be a return; (2) be executed under penalty of perjury; (3) contain sufficient data to allow calculation of tax; and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax law."

M*oroney v. IRS (In re Moroney)*, 352 F.3d 902, 905 (4th Cir. 2003) (citing *United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029, 1033 (6th Cir. 1999)); *Beard v. Commissioner*, 82 T.C. 766 (1984), *aff'd* 793 F.2d 139 (6th Cir. 1986).   However, for four reasons I do not believe that it follows that this definition of "return" should be used in gleaning the meanings of the words "or equivalent report or notice" in Section 523(a)(1).

First, to equate "return" and "equivalent report or notice" would render redundant the latter phrase that was expressly added by Congress to Section 523(a)(1) when enacted BAPCPA.   If a report or notice itself meets the definition of "return," it would already be covered by the words "a return" that immediately precede the phrase "or equivalent report or notice" and that were contained in Section 523(a)(1) before the BAPCPA amendments.

Second, the inclusion of the words "or given" in the BAPCPA amendments

---

2  The Bankruptcy Court properly held that *Shorton v. Commonwealth of Massachusetts (In Re Shorton)*, 375 B.R. 26, 31 (Bankr. D. Mass. 2007) is distinguishable because Massachusetts law, unlike Maryland law, requires the filing of an amended state return when there has been an adjustment made to the taxpayer's federal return.

supports the view that something less formal than a "return" was contemplated by the amendments since "returns" are filed, not given.

Third, in my judgment the Bankruptcy Court improperly interpreted the significance of a paragraph in a report issued by the House of Representatives while deliberating on BAPCPA.[3]  That paragraph contained the following explanation of the changes to Section 523(a)(1):

> Sec. 714.  Income Tax Returns Prepared by Tax Authorities.  Section 714 of the Act amends section 523(a) of the Bankruptcy Code to provide that a return prepared pursuant to section 6020(a) of the Internal Revenue Code, or similar State or local law, constitutes filing a return (and the debt can be discharged), but that a return filed on behalf of a taxpayer pursuant to section 6020(b) of the Internal Revenue Code, or similar State or local law, does not constitute filing a return (and the debt cannot be discharged)."

H.R. Rep No. 109-31, 109th Cong., 1st Sess. at 103, *reprinted in* 2005 U.S.C.C.A.N. 88, 167.

Section 6020 of the Internal Revenue Code, referred to in the portion of the House Report just cited provides:

> (b) Execution of return by Secretary.—
>
> (1) Authority of Secretary to execute return.—If any person fails to make any return required by any internal revenue law of regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.
>
> (2) Status of returns.—Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

---

[3] There is a bit of dissidence between the Bankruptcy Court's reliance both on the federal common law definition of "return" and Section 6020 of the House Report in that the disclosure of information referred to in Section 6020 of the Internal Revenue Code (referenced in the House Report) does not seem to meet the requirements of a "return" as defined by federal common law.

26 U.S.C. §6020.

In the present case Ciotti did not "consent to disclosure of all information necessary for the preparation" of the amended Maryland income tax returns. Rather, the Comptroller prepared the returns based upon the information provided to Maryland tax authorities by Internal Revenue Service. Therefore, this case falls within the spirit of Section 6020(b) of the Internal Revenue Code that, according to the House Report, prohibits dischargeability rather than within the spirit of Section 6020(a) which, according to the House Report, would make income tax liabilities dischargeable.[4]

Fourth, the purposes of the BAPCPA amendments included "restoring personal responsibility and integrity in the bankruptcy system," "deter[ing] . . . abusive bankruptcy filings," and closing "loopholes and incentives to allow and – sometimes – even encourage opportunistic filings and abuse." H.R. Rep. No. 109-31-109th Cong., 1st Sess., 2005 U.S.C.C.A.N. 88, 89, 92. These purposes would not be served, indeed they would be frustrated, if the Bankruptcy Court's interpretation of Section 523(a)(1), as amended, were adopted.

A separate order is being entered herewith reversing the Bankruptcy Court's order.

DATE:   12/16/2009            __/s/_____
                              J. Frederick Motz
                              United States District Judge

---

4 I note that Ciotti argues that her position draws support from the fact that the relevant portion of Section 523(a)(1), as amended by BAPCPA is phrased in the passive voice, i.e., "or equivalent report or notice . . . [that] was not filed or given." This contention is unpersuasive because, although the information concerning the increases in Ciotti's federal taxable income was provided by the Internal Revenue Service to Maryland tax authorities, no one provided to the Maryland tax authorities the report required by Section 13-409(b)(1) of the Maryland tax code.